# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

HAENG HWA LEE,

    Defendant.

Criminal Case No. 06- 00080

**ORDER DISMISSING INDICTMENT AND DENYING MOTION TO RECONSIDER**

This case is one in a series of prosecutions arising out of an alleged conspiracy to obtain Guam drivers' licenses for non-resident Koreans through the use of a false Internal Revenue Service Taxpayer Identification Number. Defendant Haeng Hwa Lee ("Lee") is charged in a two-count indictment with criminal conspiracy, 18 U.S.C. §§ 2 & 371, and knowingly and without lawful authority producing an identification document, 18 U.S.C. § 1028(a)(1), (b)(1)(A)(ii) & (c)(3)(A). At the pretrial conference on this matter, the Court discussed with the parties the elements of Count II and whether the government could present admissible evidence that would allow it to go to a jury on those issues. On the basis of that discussion, the defendant renewed her Motion to Dismiss the Indictment. For the reasons stated on the record, and because the Government represented it could not present admissible evidence that would satisfy the "without lawful authority" element as set out by the Court, the Court granted Lee's Motion. The Government has since filed a Motion for Reconsideration. For the reasons stated at the pretrial

conference, as well as those discussed below, the Court denies the Motion for Reconsideration.

**I.     BACKGROUND**

The First Superseding Indictment, filed January 23, 2008, charges two counts.  Count I charges criminal conspiracy and aiding and abetting pursuant to 18 U.S.C. §§ 2 & 371.  In particular, it charges that Lee conspired "to commit the offense of Fraud in Connection with Identification Documents, in violation of Title 18, United States Code, Section 1028(a)(1)" and that she "perform[ed] at least an overt act for the purpose of carrying out the conspiracy, to-wit: the submission of an application for a Guam driver's license, said application bearing a false Taxpayer Identification Number (TIN) 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."  Count II charges fraud in connection with identification documents.  In particular, Count II charges that "[o]n or about June 4, 2004 . . . [Lee] did knowingly and without lawful authority produce an identification document, authentication feature and false identification document, to-wit: Guam driver's license number 1228100592, by means of a false Internal Revenue Service Taxpayer Identification Number (TIN) 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, and the production of said driver's license was in and affected interstate and foreign commerce."  Count II charges that these acts occurred in violation of 18 U.S.C. §§ 2 & 1028.[1]  It is undisputed that the Government does not charge that the defendant physically assembled the driver's license herself; rather, Guam Motor Vehicle Division ("MVD") employees issued the license.  Instead, the First Superseding Indictment charges Lee with producing a driver's license by giving false information (a TIN) to MVD employees.

As the Government explained in its trial memo, this case is one of a series of prosecutions against individuals who allegedly conspired with Eun Young ("Ina") Lee and others to submit false I.R.S. Tax Identification Numbers ("TIN") to Guam MVD in order to procure a Guam driver's license issued by MVD.  Prior to this particular action, the Government prosecuted Ina Lee, as well as numerous employees of MVD, for violations of 18 U.S.C. § 1028(a)(1) as a result

---

[1] Section 1028 is the substantive offense.  Section 2 of Title 18 is the general Federal statute on principals.

- 2 -

of their role in procuring drivers licenses on the basis of false TINs.

In December 2008, the defendant filed a Motion to Dismiss, which the Court denied in an order dated January 16, 2009. In her Motion to Dismiss, Lee had argued that no statute or regulation required a TIN to get a license and, as a result, the submission of an application bearing a false TIN could not have been "without lawful authority." Docket No. 18 at 1-2 (December 3, 2008). The Court rejected this argument. See Order Re: Motion to Dismiss Indictment (Docket No. 26) (January 16, 2009); see also 16 G.C.A. §§ 3101(e)(12), 7105(c).

The adequacy of the fit between the charges, the evidence, and the statute arose again in preparation for the pretrial conference on March 17, 2009. After the Court discussed the theory of the case and the evidence with the parties, Lee renewed her Motion to Dismiss on the grounds articulated by the Court during the discussion. The Court granted this Motion from the bench. On March 18, 2009, the Government filed a Motion for Reconsideration.

## II. DISCUSSION

The Government asserts that, taking §§ 2(b) and 1028(a)(1) of Title 18 together, it need only show that the defendant knowingly submitted a false TIN to Guam MVD. On the basis of the statutory language, the Court holds that the Government must prove the following elements beyond a reasonable doubt: (1) the Guam driver's license was an identification document, authentication feature, or false identification document; (2) that the defendant produced the document knowingly and without lawful authority; and (3) that the production, transfer, possession or use of the driver's license was in or affected interstate or foreign commerce. Section 1028(a)(1) plainly prohibits forgery. As a result, although there is a place for the use of 18 U.S.C. § 2, the Court will not read § 2(b) so broadly that it, in effect, converts this counterfeiting offense into crime of providing false information. Rather, the Court holds that, as part of the second element, the Government must show that (1) the defendant knowingly submitted a false TIN and (2) Guam MVD employees issued the driver's license "without lawful authority," i.e., knowing that the applicant had not fulfilled the requirements to get such a license. Because the Government represented that it did not have admissible evidence to make

- 3 -

this latter showing, the Court denies the Motion to Reconsider dismissal of the First Superseding Indictment.

### A. Elements of the Offense

Of principal relevance here, the First Superseding Indictment charges Lee with violating (and conspiring to violate) Title 18, Section 1028 of the United States Code. Section 1028 has "two primary purposes": (1) "it provides for offenses involving federal identification documents, including counterfeiting and trafficking in counterfeits" and (2) "it creates certain federal offenses relating to counterfeiting and trafficking in counterfeits and stolen state, local, and foreign identification documents." House Report No. 97-802, 1982 U.S.C.C.A.N. 3519. Section 1028 provides eight different offenses that serve these purposes. 18 U.S.C. § 1028(a)(1)-(8).[2]

Count II of the First Superseding Indictment only charges a violation of one subsection, (a)(1). In relevant part, that subsection provides:

> Whoever, in a circumstance described in subsection (c) of this section . . . knowingly and without lawful authority produces an identification document, authentication feature, or a false identification document . . . shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 1028(a)(1). As the relevant jurisdictional circumstance, the First Superseding Indictment charges subsection (c)(3)(A), i.e., that "the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce[.]" 18 U.S.C. § 1028(c)(3)(A); First Superseding Indictment at 2:8-12.

The statutory language plainly requires that, to prove that Lee was in violation of 18 U.S.C. § 1028(a)(1), the Government must establish beyond a reasonable doubt that (1) the Guam driver's license was an identification document, authentication feature, or false identification document; (2) that the defendant produced the document knowingly and without lawful authority; and (3) that the production, transfer, possession or use of the driver's license

---

[2] The original § 1028(a), enacted in 1982, outlined six subsections. See Pub. Law No. 97-398. Subsection (a)(7) was added in 1998 by Public Law No. 105-318. Subsection (a)(8) was added in 2003 by Public Law No. 108-21.

- 4 -

was in or affected interstate or foreign commerce. Alternatively, using 18 U.S.C. § 2, the Government must prove beyond a reasonable doubt that the defendant (1) knowingly and intentionally aided, counseled, commanded, induced, or procured someone to commit the underlying crime of "knowingly and without lawful authority produc[ing] an identification document," 18 U.S.C. § 2(a), or (2) that the defendant willfully caused Guam MVD to produce, without lawful authority, the driver's license, id. § 2(b).

The parties do not dispute that the indictment properly charges that the Guam driver's license was an identification document or that the Government has evidence sufficient to sustain its burden on this point.[3] Section 1028(d)(3) defines an "identification document" as "a document made or issued by or under the authority of the United States Government [or] a State[4] . . . which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals." According to the Government's representations about its case, the driver's license at issue in this case was issued by Guam MVD, and was not "subsequently altered for purposes of deceit." See 18 U.S.C. § 1028(d)(4)(A); see also id. § 1028(d)(1). The parties also do not dispute the relevance of the "interstate commerce" element.

The heart of the debate over this offense surrounds the second element, i.e., the phrase "knowingly and without lawful authority produces." The Government argued at the pretrial conference and in its Motion for Reconsideration that it could meet its burden to show "production without lawful authority" merely by proving that Lee knowingly provided a false TIN to Guam MVD. Because this approach undermines the plain meaning of the statute, the Court disagrees.

---

[3] While the First Superseding Indictment did not make clear whether the driver's license was a false identification document or an identification document, the Government expressly stated at the pretrial conference that the driver's license was an identification document.

[4] Guam is a "State" under this statute. 18 U.S.C. § 1028(d)(11) ("[T]he term 'State' includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any other commonwealth, possession, or territory of the United States.").

### 1. Section 1028(a)(1) prohibits production, i.e, forgery

Section 1028(a)(1) plainly prohibits the creation of fake identification; that is, it prohibits forgery. The language of subsection (a)(1), the structure of subsection (a), and the legislative history of this offense make clear that (a)(1) contemplates prosecutions against those who physically create counterfeit or forged documents. The Court begins, as it must, with the plain language of (a)(1). See Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739 (1989). Section 1028(a)(1) criminalizes the "production" of an identification document "knowingly and without lawful authority." "Produce" plainly means to "make" or "create," and § 1028(d)(9) defines the term consistently with that ordinary meaning by including within its scope "alter, authenticate, or assemble." Congress used different verbs in different subsections, presumably to indicate that each subsection is intended to proscribe different conduct. See S.E.C. v. McCarthy, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."). The use of the verb "produce" in subsection (a)(1) can be contrasted with the use in other subsections of different verbs – including "possess," "traffic," "transfer," and "use," see 18 U.S.C. § 1028(a)(2)-(8) – to emphasize that (a)(1) is intended to criminalize the conduct of those who actually make false identifications or identification documents without lawful authority. Indeed, the legislative history on § 1028(a)(1) expressly explains that

> [p]roduction without lawful authority is basically a counterfeiting offense. Production has been defined to include the terms alter, authenticate or assemble, but is not limited to those terms. Production therefore includes the forgery of an otherwise lawfully issued document by changing it without lawful authority. It also includes making, manufacturing, issuing, and publishing.

1982 U.S.C.C.A.N. at 3527 (House Report No. 97-802, September 10, 1982).[5]

Taken in conjunction with "production," the phrase "without lawful authority"

---

[5] In a related case against MVD employees, the Government cited House Report 97-802 at length. In this case, the Government specifically cited to its brief in the previous case, and provided the Court with that brief.

- 6 -

emphasizes that this is a forgery statute. While § 1028 does not define the phrase "without lawful authority," the use of the term in context and the legislative history provide guidance. The phrase draws the line between the production of identification that is regular and authorized, such as that performed by a DMV employee in the normal course of his duties, and that which is illegal. That is, the term is in the statute to clarify that the statute does not criminalize *all* production of identification documents (that would be absurd); rather, it simply criminalizes the production of such documents when that production is not done under the authority of the state, or, if done by an employee of the state, is done outside the capacity of his or her job. As the House Committee defined "lawful authority," the term "refers to the authority to manufacture, prepare, or issue identification documents by statute or regulation, or by contract pursuant to such authority." 1982 U.S.C.C.A.N. at 3528. An individual who has no authority to manufacture or prepare official identification – such as an individual who creates driver's licenses showing age 21 for individuals under the age of 21 who want to purchase alcohol – therefore does so "without lawful authority." Additionally, the legislative history contemplates that an individual associated with a state agency could, in some situations, act "without lawful authority." For example,

> [a] person, such as a clerk, who is authorized to issue identification documents upon the satisfaction of certain requirements, could be acting without lawful authority if he issued an identification document knowing that the requirements had not been fulfilled. Similarly, a party printing identification documents under authorized contract could be producing without lawful authority if he delivered an identification document to any party other than an authorized recipient.

Id.

Perhaps because the statute so plainly centers on the active creation of unauthorized documents – either by someone completely outside of the state system or by someone within the state system who knows he is processing applications that do not fulfill the requirements for issuance – the Court has found nothing in the text of (a)(1) or the legislative history of (a)(1) that

suggests that lying in order to receive a license constitutes "production" under the statute.[6] Such an interpretation stretches the definition of "production" beyond the bounds of the plain meaning (as it is ordinarily used, and as the statute defines it) of "production." Other Federal criminal statutes expressly *do* criminalize misstatements made in order to receive identification documents. See, e.g., 18 U.S.C. § 1542 ("Whoever willfully and knowingly makes any false statement in an application for a passport with intent to induce or secure the issuance of a passport. . ."). The presence of such language in other statutes suggests that Congress knows to address this conduct when it so intends. Cf. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 440 (1989). Additionally, the legislative history to § 1028 suggests that a statute using such language was amended to create the enacted law. See 1982 U.S.C.C.A.N. at 3522-24 (statute as introduced included prohibitions on "the use of fraud to obtain a written identification instrument" and on "mak[ing], conceal[ing], utter[ing], possess[ing] or traffic[king] in a counterfeit or forged written identification instrument," but amendment "limits the application of the Act to offenses involving the production and transfer of false identification documents").[7]

### 2. The impact of § 2(b)

The Government essentially argues that, by using § 2(b), it may prove that the defendant violated (a)(1) merely by knowingly submitting false information – here, the TIN. While there is certainly a role for § 2 in the § 1028 scheme, the Court cannot read § 2(b) so broadly as to alter

---

[6]As a whole, § 1028 addresses fraud in connection with identification documents, but it does so by enumerating specific offenses.

[7]According to the Background provided in the legislative history, one impetus for § 1028 as a whole was a House Committee Report that found "false identification documents could be obtained readily and inexpensively throughout the United States from a variety of commercial sources, and that genuine government identification documents could be easily obtained from the issuing offices by means of simple misrepresentations." 1982 U.S.C.C.A.N. at 3520. While the charges at issue here might serve that finding, (1) the greater history of the Act, including earlier propositions that were not adopted, see id. at 3522, (2) the commentary explaining the adoption or hesitation to adopt certain administrative positions, see id. at 3526, and (3) the numerous different offenses ultimately enacted under § 1028(a), all suggest that Congress had different approaches for different crimes.

- 8 -

the plain meaning of § 1028.  To do so – particularly in a criminal context and particularly when an indictment need not even *charge* § 2 – would offend basic notions of due process.

Section 2 of Title 18, entitled "Principals," provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.  Under § 2(b), "the government need not prove that someone other than the defendant was guilty of the substantive crime." United States v. Armstrong, 909 F.2d 1238, 1241 (9th Cir. 1990), as amended.  "[B]oth subsections [of § 2] are implied in every indictment." Id. at 1242.  In other words, under § 2(b), "a defendant can be convicted as an aider and abettor even if he causes an innocent intermediary who lacks criminal intent to commit the ultimate offense." United States v. Johnson, 132 F.3d 1279, 1285 (9th Cir. 1997).

The Government argues that, if it uses § 2(b), it is enough if Lee knowingly submitted false information – here, the TIN – and thereby "caused to be produced" an identification document that was based on false information, even if Guam MVD employees issued the driver's license without any awareness that the defendant had not fulfilled the requirements.  Part of this argument is well-taken.  It is plausible, under § 2, that a defendant could be guilty of § 1028(a)(1) without herself having done the actual production, if she asked someone to forge a document but did not phyically assemble the relevant document herself.  But such a theory does not extend so far as to eliminate the requirement that someone actually did produce the driver's license *without lawful authority*.  Relatedly, it cannot be the case that § 2(b) is expansive enough to convert subsection (a)(1) from a "making counterfeit documents" statute to a "providing false information" statute.

Granted, the only Circuit opinion on point, from the Fourth Circuit, appears to support the

- 9 -

Government's approach. United States v. Rashwan, 328 F.3d 160 (4th Cir. 2003).[8] (As far as the Court can tell, there is no binding jurisprudence on point, and limited jurisprudence overall.) In Rashwan, an Egyptian national who entered the United States on a six-month visitor's visa continued to reside in the United States illegally at the end of the authorized six months. 328 F.3d at 162. The defendant applied for a Virginia identification card and learner's permit with the Virginia Department of Motor Vehicles. Id. In order to receive his license, the defendant was required to provide a sworn statement of his name and the place and length of his Virginia residence. Id. After he was convicted for a violation of 18 U.S.C. § 1028(a)(1), the defendant argued that he had not "produced" the driver's license within the meaning of the statute. Id. at 165. The Fourth Circuit affirmed the conviction, holding that the defendant could not "insulate himself from punishment by manipulating innocent third parties to perform acts on his behalf that would be illegal if he performed them himself." Id. The Fourth Circuit explained that the defendant "aided and abetted the production of false identification documents by providing false information to the DMV with the specific intent that the agency would then produce a false identification document for him." Id. According to the Fourth Circuit, "[b]ecause Rashwan specifically intended for the DMV to issue a fraudulent identification card and license, it does not matter whether the clerk who actually produced the license also had any intent to commit the crime." Id. (citing United States v. Ruffin, 613 F.2d 408, 412 (2d Cir. 1979)).

The Court is not persuaded by Rashwan. To the extent that Rashwan simply holds that 18 U.S.C. § 2 may provide for situations where defendants may violate § 1028(a)(1) without actually doing the act of production themselves, the Court agrees. To the extent Rashwan goes further, the Court is not persuaded by its reasoning. First, the Rashwan court did not address the impact of its holding on the "without lawful authority" element of (a)(1). Although the case

---

[8] The Government also cites United States v. Mendez, 528 F.3d 811 (11th Cir. 2008). In Mendez, one of the charges was analogous to the approach charged here and discussed in Rashwan, but the defendant did not challenge that charge, and the Eleventh Circuit's opinion therefore did not have occasion to discuss it (and in fact did not discuss it). Instead, Mendez considered whether a conviction under 18 U.S.C. § 371 could stand.

presented analogous facts, the statutory arguments raised in the case were different. In that case, the defendant was challenging whether he could have been producing false identification documents without actually having made them. Here, the Government appears to have conceded that "false identification documents" – which have a different statutory definition than "identification documents," compare § 1028(d)(3) with § 1028(d)(4) – are not at issue. See p.5, supra. Perhaps because it was addressing "false identification documents" or perhaps because it assumed without discussion that the "without lawful authority" requirement was met, Rashwan addressed neither the "without lawful authority" portion of the statute nor the legislative history on which the parties rely here.

The consideration of "without lawful authority" is important, however. While § 2(b) might have some impact on the situations where the statute applies, the presence of "without lawful authority" as an element of the offense limits its effect. As mentioned above, § 2(b) has been interpreted to support conviction if a defendant "causes" an innocent intermediary to perform the act. Under § 1028(a)(1), the statutory state of mind is "knowing," but the production still must be "without lawful authority" to be illegal. And according to the legislative history, where a clerk (such as a Guam MVD employee) has done the production, he does so "without lawful authority" if he "issue[s] an identification document knowing that the requirements [have] not been fulfilled" or if a contractor "deliver[s] an identification document to any party other than an authorized recipient." 1982 U.S.C.C.A.N. at 3528.[9] This definition of "without lawful authority" suggests that an employee has the lawful authority to issue a license on the basis of documents whose validity he has no reason to question; in fact, it may be his ministerial duty to do so.

---

[9]The Court notes that the Government appeared to argue at oral argument that the First Superseding Indictment charged Lee with aiding and abetting Ina Lee. As far as the Court understands the larger picture, however, Ina Lee was also not "producing" documents, except under a Rashwan-like aiding and abetting theory. The Court therefore assumes that the Government's theory in fact centers on Lee causing the Guam MVD employees to produce the document. This is consistent with the approach suggested in the Government's Motion for Reconsideration.

- 11 -

Most importantly, the Court finds Rashwan and the Government's reading of § 2(b) and § 1028(a)(1) too broad in light of the statute's intent. While the Government and Rashwan present a reading of § 2(b) and § 1028(a)(1) that the text of § 2(b) theoretically would allow, principles of statutory interpretation, and fairness and notice, make this reading untenable in the Court's opinion. Under the approach endorsed by Rashwan and urged by the Government, an individual is punished for the act of lying to the government under a statute that prohibits the act of producing forged documents, simply because of the presence of § 2(b). While both interpretations punish dishonesty at a broader level, they punish different dishonest acts. Certainly, § 1028 as a whole punishes dishonest acts in connection with identification documents, but it does so by setting out *specific* dishonest acts that will constitute offenses rather than by generally prohibiting "fraud." A violation of one subsection may not be a violation of another. It cannot be the case that § 2 changes the *act* the charged subsection punishes in so fundamental a way. It is inappropriate to stretch a statute beyond its intended meaning in any circumstances. Courts should be even more careful in the realm of criminal law, where due process and notice concerns are particularly acute; and courts should be particularly hesitant to read sweeping breadth into *§ 2* because that charge need not be part of any indictment. It is one thing to allow § 2 to broaden the individuals covered by the crime to include those who incite others to act; it is another to allow § 2 to transform the crime into one that punishes a different type of act.[10] Cf. U.S. v. Chiarella, 184 F.2d 903, 909-10 (2d Cir. 1950) (section 2(b) was not intended to "drastically enlarge criminal liability").

**3.     Other available offenses**

Perhaps what is driving the Government's argument, and the Fourth Circuit's reasoning in Rashwan, is the inclination that the facts as charged *should be*, and therefore likely are, illegal and punishable. The Court does not disagree with this inclination – rather, the Court simply holds that the Government cannot show a violation of *this* offense merely by showing that Lee

---

[10]This distinction perhaps requires careful line-drawing.

- 12 -

lied to the MVD.

The Government protests that if providing a false TIN to the DMV is not covered by subsection (a)(1), there is no statute that prohibits it. Of course, simply because there is no other statute that would proscribe conduct does not mean that courts (or the Government) may squeeze conduct into a criminal statute by expanding that statute's text. The Court assumes the Government's point is slightly different: because using a false TIN to get a driver's license is the *type* of activity that common sense says is illegal, it follows that it is likely proscribed by a federal statute, and § 1028 is aimed at this type of offense. The Court notes, however, that it is not necessarily the case that no other statute proscribes the charged conduct. For example, while the First Superseding Indictment charges that the identification document at issue here is a Guam driver's license, it may well be that a TIN also constitutes such a document. 18 U.S.C. § 1028(d)(3) (identification document is a document issued by the United States or a State that "is of a type intended or commonly accepted for the purposes of identification of individuals"); see United States v. Abbouchi, 502 F.3d 850, 857 (9th Cir. 2007) (holding that social security cards are "identification documents" under § 1028). If so, a number of the subsections of § 1028(a) (including (a)(1), if charged differently), might apply to the alleged facts here. See 18 U.S.C. § 1028(a)(1), (2), (4), (6). Additionally, TINs are expressly listed as a "means of identification" under § 1028(d)(7). It may therefore be the case that subsection (a)(7) proscribed the conduct charged here.[11] Moreover, the Court notes that Congress, in enacting § 1028, did not contemplate that section to be the sole means of punishing identity-related crimes. See 1982 U.S.C.C.A.N. at 3526 ("Federal legislation alone cannot eradicate the problem of false identification. The Committee strongly encourages state and local governments and the private

---

[11]Subsection (a)(7) proscribes the conduct of an individual who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law." 18 U.S.C. § 1028(a)(7). Applicable federal laws may be immigration related. See also 16 G.C.A. §§ 3109(f), 3109.1.

- 13 -

sector to complement the Federal role in this area with appropriate preventive and enforcement measures."). Put differently, even if there is not an applicable federal law, that does not mean that state law does not provide an avenue for prosecution. Not all offenses are punishable under Federal law. Indeed, Guam law prohibits a person from "knowingly mak[ing] a false statement or knowingly conceal[ing] a material fact or otherwise commit[ting] a fraud in any [application for a license or permit]," 16 G.C.A. § 3109(f), and the MVD application form at issue here requires an individual to declare under penalty of perjury that the material on her application is true and correct.

### 4. Summary of elements

Overall, the text and legislative history of § 1028(a)(1) makes clear that the subsection fundamentally prohibits the creation of counterfeit documents, i.e., forgery. While other subsections prohibit possession, transfer, and use of certain documents, subsection (a)(1) prohibits *production*; both the ordinary meaning of that term and the statutory definition suggests that (a)(1) provides punishment for individuals who are creating – by assembling or altering, for example – identification. Within that structure, the term "without lawful authority" provides an important limit. Congress contemplated the participation of government employees in the improper production of identifications. The explanation provided by the legislative history essentially establishes that government employees act without lawful authority when they give an identification to someone whom they know has not fulfilled the requirements, or the corollary of a contractor who makes a document for someone who is not authorized under the contract to receive it. Both are examples of government agents *misusing* their authority to the extent that they *become* counterfeiters.

In summary, (a)(1) is a counterfeiting offense. The aiding and abetting statute cannot be read so expansively that it converts a forgery offense into a "providing false information" crime. Accordingly, it is not enough under § 1028(a)(1) for the Government to prove that Lee knowingly provided Guam MVD with a false TIN. Rather, the Government must show that the Guam MVD employees then issued the identification document "without lawful authority" as

- 14 -

that term is defined through the legislative history. Put differently, the Government must show that Guam MVD employees misused their authority.

**B.   The Government's Offer of Proof**

The Government suggested at oral argument that it has a theory of this case that goes to proving that Guam MVD was acting "without lawful authority." In previous prosecutions, the Government charged Guam MVD officials with violations of § 1028(a)(1) for their role in issuing the false licenses. (Those prosecutions resulted in acquittals.) The Government acknowledged, however, that its offer of proof did not contain sufficient *admissible* evidence to show that the Guam MVD employees were acting without lawful authority as the Court has defined that element. Because the Government cannot sustain its burden of proof on this element, the Court granted Lee's Motion to Dismiss.

**III.   CONCLUSION**

Because the Government cannot offer proof that meets the "without lawful authority" element of its case, the Court dismissed the charges against Lee. For the same reasons, the Court denies the Government's Motion for Reconsideration.

**SO ORDERED** this 19th day of March, 2009.

/s/ Dean D. Pregerson
Dean D. Pregerson[12]
United States District Judge

---

[12]   The Honorable Dean D. Pregerson, United States District Judge, Central District of California, sitting by designation.

- 15 -